ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| ÁNGEL M. RIVERA FLORES Y/O TERESITA OTERO CORTÉS<br><br>**RECURRENTES**<br><br>v.<br><br>STAR ROOFING CORP. UNITED SURETY & INDEMNITY COMP. - USIC<br><br>**RECURRIDA**<br><br>DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR<br><br>**AGENCIA RECURRIDA** | KLRA202400420 | Revisión administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. SAN-2023-0016163<br><br>Sobre: CONSTRUCCIÓN |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de septiembre de 2024.

Los recurrentes, Ángel M. Rivera y Teresita Otero Cortés, solicitan por derecho propio que revoquemos una resolución del Departamento de Asuntos del Consumidor (DACo).

La recurrida, Star Roofing Corporation, no presentó su oposición al recurso dentro del término concedido.

Los hechos que anteceden a la controversia que atendemos hoy son los siguientes.

## I.

El 25 de mayo de 2023, los recurrentes presentaron una querella en el Departamento de Asuntos del Consumidor contra Star Roofing Corporation. Los recurrentes alegaron que contrataron a la recurrida para que sellara el techo de su residencia. No obstante, sus servicios no fueron satisfactorios porque la reparación fue defectuosa. Según los querellantes, (1) a la semana de entregada la obra comenzó a bajar agua por casi todo el trabajo realizado y por

Número Identificador

SEN2024_____

donde antes no ocurría, (2) se desprendió parte del empañetado, (3) tuvieron que poner al baño fuera de servicio por seguridad, (4) la situación se ha empeorado con el pasar del tiempo y se ha convertido en una pesadilla cuando llueve, (5) la recurrida ha acudido cuando la llaman, pero no ha resuelto el problema, (6) la situación le está ocasionando daños y perjuicios y afecta su salud y (7) el contratista está consciente de su negligencia. **Los recurrentes solicitaron la devolución del dinero que pagaron a la recurrida.**

El 15 de noviembre de 2023, el Técnico de Investigación, Edgardo Amador Acevedo, realizó el Informe de Inspección. La propiedad fue inspeccionada el 14 de noviembre de 2023. Los resultados y hallazgos de las inspección son los siguientes: (1) la estructura interior experimenta problemas severos de infiltración y humedad que impactan significativamente la integridad de la estructura y habitabilidad de la vivienda, (2) desprendimiento de la pintura de techo del balcón y el pasillo, (3) desprendimiento de la pintura de pared y techo del cuarto número tres y el closet, (4) desprendimiento de pintura de la pared y techo en el cuarto número dos, (5) desprendimiento de la pintura y del empañetado del techo del baño de pasillo, (6) filtraciones por la constante humedad en el techo y pared del cuarto master, (7) descascaramiento de pintura del baño master, (7) filtraciones en el techo del walking closet, de la terraza y en la roseta de una bombilla eléctrica, (8) descascaramiento de pintura de techo por las constantes filtraciones en la marquesina, (9) visible deterioro del techo, debido al empozamiento de agua en relativamente toda su superficie, ocasionado por falta de drenajes, (10) el techo está en muy mal estado porque está despegado del concreto y levantado en relativamente toda su superficie y tiene huecos y burbujas.

El perito recomendó: (1) que muchas de las deficiencias fueran corregidas por la garantía, (2) la intervención inmediata para evitar

mayores consecuencias, debido al visible deterioro que no es compatible con el tiempo de instalación, (3) la remoción de todo el material despegado del concreto embolsado y lleno de burbujas, (4) comenzar desde el principio con la limpieza, sellado de grietas, minimizar empozamiento, aplicación de primer y finalmente poner la membrana escogida, (5) los trabajos sean realizados por personal especialista y cualificado. El técnico estimó el costo de la reparación en ocho mil quinientos setenta y cuatro dólares con sesenta y tres centavos ($8,574.73).

Ambas partes comparecieron a la vista administrativa en la que se admitieron como evidencia la Factura, la Certificación de Garantía y el contrato de sellado de techo. La agencia determinó los hechos probados siguientes. Los recurrentes contrataron a la recurrida alrededor del mes de septiembre de 2022 para la limpieza y sellado del techo de su residencia. Las partes acordaron que la recurrida impermeabilizaría la superficie del techo con membrana 4MM liza, refuerzo polyester. Además, de que realizaría la terminación en pintura asfáltica de aluminio sobre las membranas en una superficie de techo de 2,370 pc. Los recurrentes pagaron a la recurrida $6,862.00 por el trabajo acordado. El precio establecido incluyó la compra de materiales, la mano de obra y una garantía de diez (10) años por la instalación. La obra fue realizada por uno o dos trabajadores de la recurrida. Los recurrentes notaron anomalías desde los inicios de la obra. Los trabajos se realizaban en días de lluvia, la membrana aplicada tenía deformaciones y estaba despegada, había poca limpieza en la obra y sus alrededores y partes del techo no estaban cubiertas con la aplicación de la membrana. Los recurrentes reclamaron a la recurrida, en varias ocasiones, por las deficiencias. El presidente de la recurrida garantizó a los recurrentes la calidad del trabajo ofrecido, una garantía de diez (10) años y la existencia de dos brigadas de trabajadores

experimentados. No obstante, la obra reflejó deficiencias desde sus inicios. Determinaciones de hecho 5 a 9 de la resolución recurrida.

La agencia también determinó los hechos a continuación. Las lluvias ocurridas a una semana de terminada la obra ocasionaron filtraciones de techo severas en los dormitorios y baños. El recurrente inspeccionó la propiedad y encontró un sinnúmero de deficiencias y desperfectos que ameritaban corrección inmediata y se lo hizo saber a la recurrida. Star Roofing Corporation realizó la reparación en garantía, aplicó brea y nuevo material de sellado, pero no pudo corregir las filtraciones de techo y desperfectos de la obra. La recurrida fue negligente en la realización de la obra y su trabajo no cumplió las expectativas de los recurrentes. Aunque ha realizado más de una reparación en garantía, no ha podido corregir las deficiencias. La recurrida incumplió con sus compromisos y obligaciones contractuales porque no corrigió las deficiencias señaladas. Determinaciones de hecho 10-15 de la resolución recurrida.

El DACo incluyó en sus determinaciones de hecho los hallazgos del informe de inspección de la obra del 14 de noviembre de 2023. Según la agencia, el técnico realizó una evaluación y determinó lo siguiente:

> De la vista de inspección realizada surge que la estructura inferior está experimentando problemas severos de infiltración y humedad que están teniendo un impacto significativo en la integridad de la estructura y la habitabilidad de la vivienda en balcón con desprendimiento de pintura techo, pasillo con desprendimiento de pintura techo, cuarto # 3 y closet con desprendimiento de pintura y pared y techo, cuarto # 2, baño, pasillo con desprendimiento de pintura y desprendimiento del empañetado, techo, cuarto master con descascaramientos de pintura, walking (sic) closet con filtraciones en el techo, terraza techo con filtraciones en roseta bombilla eléctrica y descascaramiento de pintura.

Determinación de hecho 16 de la resolución recurrida.

La agencia hizo constar que el técnico añadió:

Marquesina presenta descascaramiento de pintura de techo, por las constantes filtraciones. Al subir al techo tiene un visible deterioro, con empozamiento de agua en relativamente todo el techo, por la falta de los drenajes, el techo está en muy mal estado, despegado (sic) del concreto, con huecos y burbujas levantando en relativamente todo el techo que no es compatible con el tiempo de labor. Determinación de hecho número 17.

Por último, la agencia hizo constar que el perito concluyó lo siguiente:

Muchas deficiencias deben ser corregidas por garantía. Es esencial abordar estos de forma inmediata para evitar mayores consecuencias ya que tiene un visible deterioro que no es compatible con el tiempo de instalación. Para que quede bien se recomienda que se remueva todo el material despegado del concreto embolsado lleno de burbujas. Comenzar desde el principio nuevamente, limpieza, sellado de grietas, minimizar empozamiento, para luego aplicación de primer y finalmente membrana escogida, para poder garantizar una ejecución adecuada de las acciones correctivas y lograr una rehabilitación exitosa a la propiedad anterior y a la estructura que cumpla con los estándares de calidad. Determinación de hecho número 18.

El foro recurrido dio por estipulado el informe de inspección, debido a que ninguna de las partes lo objetó.[1] La agencia determinó que la negligencia de la recurrida impedía a los recurrentes usar y disfrutar adecuadamente su residencia. Según el DACo, los recurrentes necesitan habilitar su residencia a la brevedad posible para poder usarla y disfrutarla. Determinaciones de hecho 18-20.

DACo concluyó que la recurrida incumplió los acuerdos contraídos para realizar la obra en controversia **y que procedía el cumplimiento de la garantía y la devolución total del dinero a los recurrentes.** Según la agencia, la recurrida se comprometió a realizar un trabajo completo de limpieza y sellado de techo para reparar los problemas de filtraciones de la residencia. DACo advirtió que la recurrida inspeccionó la propiedad y cotizó el trabajo, antes de otorgar el contrato. La agencia dio entera credibilidad al

---

[1] DACo no se percató que el recurrente había cuestionado el informe. No obstante, en nada afecta nuestra determinación.

testimonio del recurrente. Su testimonio probó que la residencia tenía desperfectos severos, que la recurrida nunca pudo corregir. DACo advirtió que la recurrida ocasionó daños adicionales a los recurrentes, porque las filtraciones eran más severas a las existentes cuando comenzó la obra. La prueba presentada convenció al DACo de que los recurrentes, nunca pudieron corregir los problemas de filtraciones por los que pagaron a la recurrida $6,862.00.

El foro recurrido concluyó que la recurrida no realizó adecuadamente trabajos esenciales como, por ejemplo: aleros, corrección de algunas grietas y ciertos desagües, entre otros. El DACo hizo hincapié en las serias deficiencias que ameritan una inversión de dinero para intentar corregirlas. Según DACo, los desperfectos señalados están constatados en el informe del inspector que visitó la residencia, realizó sus observaciones y conclusiones y emitió su opinión pericial. La agencia determinó que las partes estipularon el informe cuyo contenido es fundamental para adjudicar la controversia. Finalmente, DACo resolvió que la recurrida colocó a los recurrentes en un estado de indefensión que atenta contra su salud y seguridad y los obligó a incurrir en gastos adicionales no presupuestados para contratar un tercero que corrija las filtraciones que, debido su negligencia, persisten.

La agencia declaró HA LUGAR la querella y ordenó a la recurrida pagar a la recurrente la cantidad de tres mil dólares ($3,000.00). Los recurrentes solicitaron reconsideración oportunamente, porque no estaban de acuerdo con esa cantidad y reclamaron la devolución de todo lo pagado. El DACo no atendió la reconsideración. Los recurrentes presentaron oportunamente este recurso en el que reclaman que la recurrida les devuelva todo el dinero que le pagaron por sus servicios.

**II.**

**Revisión Judicial**

Las decisiones, órdenes y resoluciones finales de las agencias administrativas están sujetas a la revisión judicial del Tribunal de Apelaciones. La revisión judicial garantiza que los organismos administrativos actúen conforme a las facultades concedidas por ley. Los tribunales revisores debemos conceder deferencia a las decisiones de las agencias, debido a su experiencia y conocimiento especializado sobre los asuntos que le encomendó el legislador. Sus dictámenes tienen una presunción de legalidad y corrección que subsiste mientras no se produzca prueba suficiente para derrotarla. La parte que impugna judicialmente las determinaciones de hechos de una agencia tiene que demostrar que no están basadas en el expediente o que sus conclusiones son irrazonables. El criterio rector de la revisión judicial es si la decisión administrativa es razonable. La revisión judicial está limitada a evaluar si la agencia actuó de forma arbitraria, ilegal o irrazonable de manera tal que sus acciones constituyeron un abuso de discreción. *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022).

La revisión judicial se ciñe a determinar: (1) si el remedio concedido por la agencia fue el apropiado, (2) si las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo y (3) si las conclusiones de derecho fueron las correctas. El respeto hacia la resolución administrativa debe sostenerse hasta tanto no se presente evidencia suficiente para derrotar la presunción de legalidad. *OEG v. Martínez Giraud,* supra, pág. 89.

Las determinaciones de hecho de las agencias serán sostenidas por los tribunales, si están basadas en evidencia sustancial que obra en el expediente administrativo. La norma de evidencia sustancial busca evitar que los tribunales sustituyan el

criterio del organismo administrativo especializado por el suyo. El Tribunal Supremo de Puerto Rico ha definido la evidencia sustancial como aquella que es relevante y una mente razonable podría aceptar como adecuada para sostener una conclusión. No obstante, esa acepción no puede estar sostenida por un ligero destello de evidencia o por simple inferencias. El criterio rector siempre será buscar que la determinación de la agencia sea razonable y que esté basada en un análisis del expediente administrativo en su totalidad. *OEG v. Martínez Giraud,* supra, pág. 90.

Por su parte, las determinaciones de derecho de las agencias serán revisables en todos sus aspectos. No obstante, se les concede deferencia a su interpretación de las leyes y reglamentos que le corresponde poner en vigor. Sin embargo, esa deferencia, cede si la agencia: (1) erró al aplicar la ley, (2) actuó arbitraria, irrazonable o ilegalmente o (3) lesionó derechos constitucionales fundamentales. La interpretación administrativa de la ley no podrá prevalecer, cuando es incompatible o contrario al propósito para cual fue aprobada y a la política pública que la promovió. La deferencia judicial al expertise administrativo cede cuando es irrazonable, ilegal o conduce a la comisión de una injusticia. *OEG v. Martínez Giraud,* supra, pág. 90*.*

### Doctrina General de los Contratos

El contrato es un negocio jurídico bilateral. A través del contrato, dos o más partes prestan su consentimiento conforme establece la ley con el propósito de crear, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratantes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral o el orden público. Los contratos tienen fuerza de ley entre las partes, sus sucesores y terceros y se perfeccionan desde la prestación consentimiento. No obstante, esta norma no aplica los contratos que requieren el cumplimiento de una

formalidad o en los que se pacta una condición suspensiva. Arts. 1232, 1233 y 1237 del Código Civil de 2020, 31 LPRA secs. 9753, 9754 y 9771. La facultad de resolución está implícita en los contratos con prestaciones recíprocas. El incumplimiento de una obligación es causa para la resolución extrajudicial del contrato, sujeto a las reglas establecidas. Art. 1255 del Código Civil, 31 LPRA sec. 9823.

### Contratos de Servicio

Los contratos de servicios son aquellos en los que el prestador se obliga a proveer un servicio mediante el pago de un precio. Art. 1381 del Código Civil 2020, 31 LPRA sec. 10291. El precio de los servicios lo establecen las partes o en su defecto por la ley o por los usos. Art. 1384 del Código Civil 2020, 31 LPRA sec. 10301. El comitente está obligado a pagar el precio acordado por los servicios y a colaborar para que puedan ser prestados. Art. 1385 del Código Civil de 2020, 31 LPRA sec. 10311. El prestador de los servicios se obliga a proveerlos según lo convenido y con los conocimientos que conlleva la actividad por la que fue contratado. Art. 1386 del Código Civil de 2020, 31 LPRA sec. 10312.

### III.

Los recurrentes alegan que el DACo erró al no ordenar a Star Roofing a devolverles la totalidad del dinero que le pagaron por sus servicios. La agencia le ordenó devolverles tres mil dólares ($3,000.00), a pesar de que le pagaron seis mil ochocientos sesenta y dos dólares ($6,862.00) por sus servicios.

Los promoventes del recurso tienen razón, porque el DACo cometió el error señalado. El expediente administrativo tiene evidencia sustancial más que suficiente, para establecer que los recurrentes tienen derecho a que el recurrido les devuelva la totalidad del dinero que le pagaron por sus servicios. La decisión de

la agencia, además, es contraria a sus propias determinaciones de hecho y conclusiones de derecho.

Según consta en el expediente, el 2 de septiembre de 2022, las partes suscribieron un contrato para el sellado de techo de la residencia de los recurrentes. La recurrida se comprometió expresamente a garantizar la calidad del trabajo realizado, reparar sin costo alguno cualquier deficiencia ocasionada por defectos de los materiales y de la instalación o mano de obra y a honrar un certificado de garantía de diez (10) años. Igualmente se obligó a entregar el proyecto de techado en 3 días laborables, sin contar los días lluviosos o no favorables para el proyecto. Star Roofing hizo constar que su personal de instalación estaba altamente especializado y capacitado porque tenía una experiencia de 10 a 20 años de labor. Por su parte, los recurridos se obligaron a pagar en su totalidad la cantidad de $6,862.00 y cumplieron con lo pactado, según fue acordado.

El informe del inspector de DACo que examinó la obra es parte de la evidencia sustancial que forma parte del expediente administrativo. Según el DACo, los desperfectos que señaló la parte recurrente están constatados en el informe del inspector que fue estipulado. El inspector advirtió la existencia de problemas severos de infiltración y humedad que impactan significativamente la integridad de la estructura y habitabilidad de la vivienda. El funcionario encontró desprendimiento de la pintura y del empañetado y filtraciones en varias áreas del techo de la residencia. Además, señaló la existencia de agua empozada en prácticamente toda la superficie del techo, debido a la falta de drenajes. El inspector enfatizó que el mal estado en que se encuentra el techo porque está despegado del concreto y levantado en relativamente toda su superficie y tiene huecos y burbujas. El funcionario recomendó, entre otras cosas, la intervención inmediata para evitar

mayores consecuencias, y estimó el costo de la reparación en ocho mil quinientos setenta y cuatro dólares con sesenta y tres centavos ($8,574.63).

El foro administrativo realizó una vista administrativa. DACo advirtió que la recurrida visitó la residencia y cotizó sus servicios antes de realizar la obra, garantizó la calidad de su trabajo porque sería realizado por trabajadores experimentados y prometió una garantía de diez (10) años. No obstante, la prueba presentada convenció a la agencia de que los empleados de Star Roofing trabajaron en días de lluvia, no aplicaron membrana en algunas partes del techo y que la aplicada tenía deformaciones y estaba despegada. Aunque DACo reconoció que Star Roofing Corporation acudió a honrar la garantía, debido a los reclamos de los recurrentes, advirtió que nunca pudo corregir las deficiencias señaladas. El foro recurrido concluyó que Star Roofing Corporation fue negligente, incumplió sus compromisos y obligaciones contractuales porque no corrigió las deficiencias para las cuales fue contratado y ocasionó daños adicionales. Según el DACo, la recurrida puso en riesgo la salud y seguridad de los recurrentes y los obligó a incurrir en gastos adicionales no presupuestados para corregir los problemas que persisten debido a su negligencia.

**La agencia resolvió que procedía la devolución total de los** $6,862.00 que los recurrentes pagaron a la recurrida. Sin embargo, contrario a sus propias determinaciones de hecho y conclusiones de derecho, ordenó a la recurrida a pagarle a los recurrentes únicamente tres mil dólares ($3,000.00). La evidencia sustancial que forma parte del expediente administrativo y que no fue controvertida, nos deja más que claro el derecho de los recurrentes a dar por terminado el contrato y a recibir la devolución de todo el dinero que pagaron a la recurrida.

**IV.**

Por lo antes expuesto, se revoca la resolución recurrida únicamente para establecer el derecho de los recurrentes a que Star Roofing Corporation les devuelva la totalidad de los $6,862.00 que pagaron por sus servicios. La resolución recurrida queda en pleno vigor en todo lo demás.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones